IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

v.

SHEM BAILEY,
*Defendant*.

Criminal No.: ELH-16-396

## MEMORANDUM OPINION

Defendant Shem Bailey, who is now self-represented, entered a plea of guilty on March 31, 2017, to the offenses of Hobbs Act robbery, in violation of 18 U.S.C. § 1951, and using, carrying and brandishing a firearm in relation to a crime of violence, under 18 U.S.C. § 924(c). *See* ECF 54. The plea was tendered pursuant to a Plea Agreement. ECF 55. At sentencing on October 12, 2017 (ECF 87), the Court sentenced defendant to a total of 144 months of imprisonment. ECF 88.

In August 2024, defendant filed an "Emergency Supplemental Motion" for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1). ECF 132 (the "Motion").[1] He notes that he is an only child (ECF 132 at 2; ECF 142 at 2) and seeks a reduction in his sentence due "to the recent health conditions . . . of defendant's mother Mrs. DeirDre Drake." ECF 132 at 1. Defendant also submitted an "Allocution Letter." ECF 130; ECF 130-1. Moreover, he asks the Court to appoint counsel for him. ECF 131.

---

[1] Bailey filed a prior motion for compassionate release on June 25, 2021, arguing that he was at risk of severe COVID-19 due to his physical health. ECF 113. The government opposed the motion. ECF 121. Bailey replied, appending exhibits in support. ECF 123; ECF 123-1. Defendant also argued in his reply that his family circumstances constituted an extraordinary and compelling reason for his sentence reduction because he needed to provide care for his aging mother. ECF 123 at 9. By Memorandum Opinion and Order of September 1, 2022, I denied Bailey's motion. ECF 127; ECF 128.

The Office of the Federal Public Defender has declined to supplement the Motion. ECF 137. The government opposes the Motion. ECF 139 ("Opposition"). It is supported by one exhibit. ECF 139-1.

Defendant replied. ECF 140. He also supplemented the Motion, to include a list of educational courses and programs he completed between 2019 and 2025, and to provide information in regard to his mother's need for a caretaker. ECF 141. Additionally, defendant has submitted several letters to the Court regarding his status and that of his mother, other matters, and inquiring about the status of the Motion. ECF 142; ECF 143; ECF 144; ECF 145; ECF 147. For example, in a letter docketed on October 15, 2025 (ECF 144), defendant reported that he was stabbed and jumped by other prisoners "right in front of officers who didn't prevent nor try to stop it." *Id.* at 2. He also referenced an assault that occurred on July 23, 2025. *Id.* at 3. According to defendant, he is in protective custody and, as a result, he does not have access to "basic privileges." *Id.* at 4.[2] And, in a letter docketed on December 16, 2025 (ECF 147), Bailey reported that he was the victim of assault by several correctional officers.

Moreover, in correspondence docketed June 10, 2024 (ECF 130), *i.e.*, before the Motion was filed, defendant reported that he was assaulted by other prisoners on April 12, 2024. In addition, he complained of an assault that occurred in December 2017. *Id.* at 2.

Bailey is currently incarcerated at Lee USP. *Inmate Locator*, BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited December 8, 2025). The Bureau of Prisons ("BOP") indicates a projected release date of March 30, 2027. *Id.* With credit for pretrial detention dating from July 28, 2016, Bailey has served about 112 months of his 144-month sentence, or

---

[2] Contrary to defendant's assertion, his prior correspondence in October 2025 (ECF 142, ECF 143) does not indicate that he was assaulted in July 2025.

approximately 77% of his sentence.[3]

No hearing is necessary. *See* Local Rule 105.6. Defendant is quite able to present his contentions in regard to his mother's health condition and his claim that he is her sole caregiver. Therefore, I shall deny his request for the appointment of counsel, without prejudice. *See* ECF 131. Moreover, based on the current record, I shall deny the Motion (ECF 132), without prejudice.

## I. Background[4]

Bailey and a codefendant were indicted on August 4, 2016. ECF 19. Bailey was charged with Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a) (Count One); using, carrying, and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) (Count Two); and possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 5922(g)(1) (Count Three). ECF 19. Pursuant to a Plea Agreement (ECF 55), Bailey entered a plea of guilty on March 31, 2017, to Counts One and Two of the Indictment. ECF 54. The parties agreed to a total sentence ranging from 120 to 180 months of imprisonment. ECF 55, ¶¶ 10, 11.[5]

The Plea Agreement contained a stipulation of facts. *Id.* at 10. At approximately 3:57 p.m. on July 19, 2016, the defendant and his codefendant, Herman Austin, robbed the Hamilton Quick Mart in Baltimore. *Id.* at 10, ¶ 1. Bailey entered the store, armed with a handgun, and demanded money from the cash registers. *Id.* The store employee, "in fear for his safety," gave the money to

---

[3] Defendant claims that, as of October 1, 2025, he served 84.7% of his sentence. ECF 142 at 3. And, in a filing on October 15, 2025 (ECF 144), he asserts that he has served "over 85% percent" of his sentence. *Id.* at 3.

[4] I restate here, to the extent relevant, the factual background set forth in my Memorandum Opinion of September 1, 2022, denying a post-conviction motion and a motion for compassionate release. *See* ECF 351.

[5] Despite the agreed upon sentencing range, the plea was not entered under Fed. R. Crim. P. 11(c)(1)(C).

Bailey. *Id*. Austin approached a customer playing Keno and attempted to take the customer's cellular phone. *Id*. ¶ 2. When the customer resisted, Austin said: "I'm not trying to hurt you, my buddy has a gun." *Id*. Austin then took the customer's cellphone. *Id*. As Bailey walked towards the rear of the store, the employee jumped over the counter and fled. *Id*. Both Bailey and Austin then fled the store on foot. *Id*.

Count One carries a maximum penalty of twenty years of imprisonment. *Id*. ¶ 3. For Count One, the parties agreed to a base offense level of 20 under the United States Sentencing Guidelines ("U.S.S.G" or "Guidelines"). The parties also contemplated a three-level deduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1. *Id*. As a result, Count One had a final offense level of 17. *Id*. ¶ 6(b). By statute, Count Two carries a mandatory minimum term of imprisonment of seven years, consecutive to any sentence imposed as to Count One, with a maximum term of life imprisonment. *See* 18 U.S.C. § 924(c).

The Presentence Report ("PSR", ECF 70) reflected that Bailey had nine prior adult criminal convictions, of which four scored points. *Id*. ¶¶ 28–36. In particular, in 1997, at the age of 18, Bailey was convicted of two robbery offenses in New York. *Id*. ¶¶ 29, 30. He was sentenced to three to six years of custody and was paroled in March 2004. *Id*. In September 2000, Bailey was convicted of possession of contraband and sentenced to two to four years of imprisonment. *Id*. ¶ 31. He also violated his parole for the two robberies. *Id*. Shortly after Bailey was paroled in March 2004, Bailey was arrested in New York for larceny, later was found guilty, and was sentenced to six months of incarceration. *Id*. ¶ 32. Bailey was paroled in February 2006. *Id*. ¶¶ 29, 30, 31.

In June 2006, Bailey was charged in Baltimore with second degree assault. *Id*. ¶ 33. He was later convicted and sentenced to a suspended term of eighteen months of imprisonment, with

eighteen months of probation.  *Id.*  Bailey violated that probation by driving without a license in October 2006.  *Id.* ¶ 34.  As a result, he was sentenced to eighteen months of incarceration for violation of probation as to the 2006 second degree assault.  *Id.* ¶ 33.

On October 19, 2007, Bailey was arrested on the charge of possession of a firearm by a felon.  *Id.* ¶ 35.  He was indicted by a federal grand jury in Maryland and found guilty of the offense in March 2008.  *Id.*  Judge Marvin Garbis sentenced Bailey to 111 months of imprisonment and five years of supervised release.  *Id.*  But, the judgment was vacated on appeal and remanded for resentencing. *United States v. Bailey*, 487 F. App'x 823 (4th Cir. 2012) (per curiam).  In particular, the Fourth Circuit concluded that Bailey did not qualify as an armed career criminal. *Id.*; *see* MJG-07-0496, ECF 71.[6]  Bailey was resentenced to time served from December 2007 to January 17, 2014.  MJG-07-0496, ECF 85.

Bailey subsequently violated supervised release,[7] and was sentenced to eight months of imprisonment.  He was released on December 16, 2015, with his supervised release set to expire one year later.  ECF 70, ¶ 35.  Bailey committed the instant offenses while on supervised release.  A Petition for a Violation of Supervised Release was filed.  *Id.*

Bailey's criminal convictions yielded a subtotal criminal history score of 12 points.  *Id.* ¶ 37.  Two points were added because, at the time the instant offenses were committed, Bailey was on probation.  *Id.* ¶ 38.  Thus, as calculated by the PSR, Bailey had a total criminal history score of 14 points, yielding a criminal history category of VI.  *Id.* ¶ 39.[8]

---

[6] The case was initially assigned to Judge Richard Bennett, but was reassigned to Judge Garbis.  Due to the retirement of Judge Garbis, the case was again assigned to Judge Bennett.

[7] Bailey was convicted of driving without a license on November 17, 2014.  ECF 70, ¶ 36.

[8] If defendant were sentenced today, only one status point would be added, pursuant to U.S.S.G. § 4A1.1(e).  But, even if defendant had a score of 13 criminal history points, rather than

With a final offense level of 17 and a criminal history category of VI, the Guidelines for Count One called for a period of incarceration ranging from 51 to 63 months. *Id.* ¶ 76. And, as noted, Count Two required a minimum term of 84 months, consecutive to Count One. *Id.* ¶ 77. Thus, the total Guidelines range called for a sentence of imprisonment ranging from was 135 to 147 months. As noted, in the Plea Agreement the parties agreed to a sentence ranging between 120 and 180 months of imprisonment. *Id.* ¶ 78; *see* ECF 55, ¶ 10.

Sentencing was held on October 12, 2017. ECF 87. At the time of sentencing, Bailey was 38 years old. ECF 70 at 2. He stood five feet, ten inches tall and weighed 190 pounds. *Id.* ¶ 58. The PSR noted that Bailey's father died of pancreatic cancer in 1995 and was not involved in defendant's upbringing. *Id.* ¶ 52. Bailey was raised by his maternal grandparents in New York. *Id.* ¶¶ 53, 54. He is the father of four children, who then ranged in age from five to twenty-one. *Id.* ¶¶ 54–55.

The Court sentenced the defendant to 60 months of incarceration for Count One and to a consecutive term of 84 months as to Count Two, for a total term of 144 months of incarceration. ECF 88 (Judgment). The Court also imposed a term of three years of supervised release. *Id.*

In the Plea Agreement, Bailey waived many of his rights to appeal. ECF 55, ¶ 12. Nevertheless, Bailey noted an appeal to the Fourth Circuit. ECF 90. The government moved to dismiss the appeal (ECF 109), claiming it was barred by the Plea Agreement. The appeal was dismissed by the Fourth Circuit on March 27, 2020. ECF 110.

As of January 2021, defendant had completed six educational courses and had no incident reports in his discipline history from the previous six months. ECF 113-1 at 8. Bailey states that he has participated in twenty-two educational programs and workshops while incarcerated. ECF

---

14, this would still result in a criminal history category of VI.

141. These courses include drug treatment and drug counseling courses. *Id*. There are no records before the court that reflect that Bailey has committed any infractions during his incarceration.

Additional facts are included, *infra*.

## II. Appointment of Counsel

As mentioned, Bailey asks the Court to appoint counsel to assist in litigating the Motion. ECF 131. He asserts that he "can not afford to hire a lawyer" and that a "lawyer would help plaintiff to apply the law properly in briefs and before the Court." *Id.* But, there is no constitutional right to appointed counsel in post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("The right to appointed counsel extends to the first appeal of right, and no further."). Rather, the determination to appoint counsel in this context rests solely within the discretion of the district court. *See United States v. Legree*, 205 F.3d 724, 730 (4th Cir. 2000) (explaining that a district court has the discretion to appoint defendant counsel under 18 U.S.C. § 3582(c) in exceptional circumstances).

Bailey has ably demonstrated the ability to articulate the legal and factual basis of his claims with respect to his mother's health situation. Therefore, I shall deny defendant's request for counsel (ECF 131), without prejudice.

## III. Standard of Review

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Moody*, 115 F.4th 304, 310 (4th Cir. 2024); *United States v. Davis*, 99 F.4th 647, 653 (4th Cir. 2024); *United States v. Brown*, 78 F.4th 122, 128 (4th Cir. 2023); *United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023); *United States v. Bond*, 56 F. 4th 381, 383 (4th Cir. 2023); *United States v. Bethea*, 54 F.4th 826, 831 (4th Cir. 2022); *United States v. Ferguson*, 55 F.4th 262, 267 (4th Cir. 2022); *United States v. Hargrove*, 30 F.4th 189,

194 (4th Cir. 2022); *United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020), *abrogated on other grounds by United States v. Troy*, 64 F.4th 177 (4th Cir. 2023); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." *See* 18 U.S.C. § 3582(c)(1)(B); *see also Jackson*, 952 F.3d at 495.

A statutory exception is codified at 18 U.S.C. § 3582, which was first enacted as part of the Sentencing Reform Act of 1984. *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). It is commonly termed the "'compassionate release exception.'" *Moody*, 115 F.4th at 310; *see United States v. Osman*, 2024 WL 3633573, at *3 (4th Cir. Aug. 2, 2024) (per curiam) (unreported) (stating that a motion under § 3582(c)(1)(A) is "commonly referred to as a motion for compassionate release. . . ."). Specifically, 18 U.S.C. § 3582(c)(1)(A)(i) authorizes a court, in its discretion, to reduce a defendant's sentence if "extraordinary and compelling reasons warrant such a reduction,"; "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and the court has considered the factors under 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A); *United States v. Washington*, 161 F.4th 816, 818 (4th Cir. 2025); *United States v. Crawley*, 140 F.4th 165, 169 (4th Cir. 2025); *Hargrove*, 30 F.4th at 194.

As originally enacted, the compassionate release provision permitted a court to alter a sentence only upon motion made by the Director of the BOP. *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). This meant that a defendant seeking compassionate release had to rely on the BOP Director for relief. *See Bethea*, 54 F.4th at 831; *see*, *e.g.*, *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866–67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying compassionate release motion because § 3582

"vests absolute discretion" in the BOP).  However, the safety valve of § 3582 languished, because the BOP rarely filed such a motion on an inmate's behalf.  As a result, compassionate release was an infrequent occurrence.  *See Hr'g on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

In 2018, with the passage of the First Step Act, *see* Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018) (codified as 18 U.S.C. § 3582(c)(1)(A)), Congress "broadened" the authority of courts to grant sentencing modifications pursuant to 18 U.S.C. § 3582. *Malone*, 57 F.4th at 173.  In particular, the FSA authorized a court to grant compassionate release "upon motion of the Director of [BOP], *or upon motion of the defendant after the defendant has fully exhausted all administrative rights* to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first. 18 U.S.C. § 3582(c)(1)(A) (emphasis added); *see also Ferguson*, 55 F.4th at 268; *United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021); *United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020).  In other words, a federal inmate is now able to file a motion for compassionate release directly with the court, as long as the inmate first exhausts administrative remedies.  *See McCoy*, 981 F.3d at 275–76.  If a defendant has already exhausted administrative remedies upon filing a first motion for compassionate release, the defendant does not need to meet the bar for exhaustion a second time, should the defendant seek to renew the motion. *United States v. King*, 2025 WL 1692747, at *1 (4th Cir. June 17, 2025) (unreported).

However, under 18 U.S.C. § 3582(c)(1)(A), the court may modify the defendant's sentence

only if two criteria are satisfied. *Brown*, 78 F.4th at 128; *Bethea*, 54 F.4th at 831.[9]  Specifically, "the district court must conduct a two-step analysis."  *United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024); *see also Bond*, 56 F.4th at 383.

The first step consists of two parts.  The court "must determine: (1) whether extraordinary and compelling reasons warrant. . .a [sentence] reduction; and (2) that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Malone*, 57 F.4th at 173; *see Moody*, 115 F.4th at 310; *Davis*, 99 F.4th at 653; *Bond*, 56 F.4th at 383; *Bethea*, 54 F.4th at 831; *United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021) (per curiam), *cert. denied*, 142 S. Ct. 383 (2021).  The court's analysis of these two steps goes hand in hand. *United States v. Burleigh*, 145 F.4th 541, 547 (4th Cir. 2025).  If that first step is met, the court then proceeds to the second step.

Under the second step, the court must determine whether release is appropriate in light of the sentencing factors in 18 U.S.C. § 3553(a), "to the extent those factors are applicable." *Bethea*, 54 F.4th at 831; *see Moody*, 115 F.4th at 310; *Malone*, 57 F.4th at 174; *Hargrove*, 30 F.4th at 194; *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021), *superseded by regulation as stated in Davis*, 99 F.4th 647; *Kibble*, 992 F.3d at 330.  "Importantly, a court assessing a compassionate release motion is entitled to consider the § 3553(a) factors '[o]nly after' conducting the first step's analysis." *Osman*, 2024 WL 3633573, at *4 (citations omitted) (alteration in *Osman*); *see Malone*, 57 F.4th at 173 (stating that the district court may consider the § 3553(a) sentencing factors only after determining that extraordinary and compelling reasons warrant a sentence reduction and that

---

[9] The Fourth Circuit has said that there are two criteria, and that the first criterion consists of two steps.  *See*, *e.g.*, *Malone*, 57 F.4th at 173.  More recently, however, in *Crawley*, 140 F.4th at 169, the Fourth Circuit stated that there are three criteria.  Whether the criteria are counted as two or three, the substance is the same.

a reduction is consistent with the Sentencing Commission's policy statements).

Generally, "the district court enjoys broad discretion in conducting a § 3582(c)(1)(A) analysis." *United States v. Jenkins*, 22 F.4th 162, 169 (4th Cir. 2021), *superseded by regulation as stated in Davis*, 99 F.4th 647. Notably, "it weighs against an abuse of discretion—and is viewed as 'significant'—when the same judge who sentenced the defendant rules on the compassionate release motion." *Bethea*, 54 F.4th at 834; *see Washington*, 161 F.4th at 820; *United States v. Gutierrez*, 2023 WL 245001, at *5 (4th Cir. Jan. 18, 2023) (unreported); *Hargrove*, 30 F.4th at 200; *High*, 997 F.3d at 189.

As the Fourth Circuit has recognized, "when deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Taylor*, 820 F. App'x 229, 230 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see Davis*, 99 F.4th at 653–54. However, if there is no applicable policy statement relating to the defendant's compassionate release motion, the court has discretion to make its "own independent determination of what constitutes an extraordinary and compelling reason under § 3582(c)(1)(A)." *Burleigh*, 145 F.4th 541, 548 (cleaned up); *see also United States v. Johnson*, 143 F.4th 212, 215 (4th Cir. 2025) (explaining that, "[i]n the absence of an applicable policy statement, district courts" have the power to "consider *any* extraordinary and compelling reason for release") (cleaned up).

The Policy Statement codified at U.S.S.G. § 1B1.13 is titled "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)" ("Policy Statement"). "[U]ntil recently," that Policy Statement did not apply to motions filed by prisoners. *Davis*, 99 F.4th at 654; *see McCoy*, 981 F.3d at 281. The Policy Statement began: "Upon motion *of the Director of the Bureau of Prisons* under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ."

U.S.S.G. § 1B1.13 (2021) (emphasis added). Interpreting this language, the Fourth Circuit said in *McCoy*, 981 F.3d at 281, that, "[b]y its plain terms . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)." Therefore, on the basis of that earlier text, the Court held: "When a defendant exercises his . . . right to move for compassionate release on his own behalf, . . . § 1B1.13 does not apply, and thus § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts." *Id.* (citation omitted). As a result, district courts were "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 284 (citation omitted).

Effective November 1, 2023, U.S.S.G. § 1B1.13 was amended. *See Davis*, 99 F.4th at 654 (citing 88 Fed. Reg. 28254 (May 3, 2023)). The Policy Statement now begins: "Upon motion of the Director of the Bureau of Prisons *or the defendant* pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ." U.S.S.G. § 1B1.13 (2023) (emphasis added). Therefore, the Policy Statement is applicable to defendant-filed motions under § 3582(c)(1)(A). *Davis*, 99 F.4th at 658 (directing district court on remand "to revisit [the petitioner's] arguments in light of the Sentencing Commission's new policy statement outlining when and how to consider changes in law as an extraordinary and compelling reason for a reduction"). As a result, when a defendant files a motion for compassionate release, a court must ensure that any sentence reduction "is consistent with" the Policy Statement's provisions. 18 U.S.C. § 3582(c)(1)(A). The court should apply the Policy Statement that is applicable "at the time the court renders its decision[,]" not at the time the motion is filed. *Crawley*, 140 F.4th at 170.

The Policy Statement provides, in part, U.S.S.G. § 1B1.13(a):

(B) IN GENERAL.—Upon motion of the Director of the Bureau of Prisons or the defendant pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of

imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

(1) (A) extraordinary and compelling reasons warrant the reduction; or

(B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

(2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) the reduction is consistent with this policy statement.

Section 1B1.13(b) of the Policy Statement is titled "EXTRAORDINARY AND COMPELLING REASONS." It identifies multiple circumstances that, individually or in combination, may provide "extraordinary and compelling reasons" for a reduction in sentence. *See* § 1B1.13(b)(1)–(6). These include certain medical circumstances of the defendant, such as a terminal illness, "serious cognitive impairment," a medical condition that requires "specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death"; or the defendant is at imminent risk of being affected by "an ongoing outbreak of infectious disease" or "an ongoing public health emergency. . . .", § 1B1.13(b)(1)(A), (B), (C), (D); the defendant's age, along with other factors, § 1B1.13(b)(2); the defendant's family circumstances, § 1B1.13(b)(3)(A), (B), (C), (D); the fact that the defendant, while in custody, was the victim of sexual or physical abuse committed by, or at the direction of, a correctional officer, § 1B1.13(b)(4)(A), (B); and for a defendant who received an "unusually long sentence" and has served at least 10 years of the sentence, a non-retroactive change in the law that "produce[s] a gross disparity" in relation to "the sentence likely to be imposed at the time the motion is filed. . . .", § 1B1.13(b)(6).

In deciding whether a defendant has met the ten-year requirement, district courts can only

consider the time a defendant has served in prison and cannot adjust that amount with good-time credits. *Crawley*, 140 F.4th at 172–73. But, under § 1B1.13(b)(5), the district court may consider "any other circumstance or combination of circumstances . . . similar in gravity to" the circumstances "described in paragraphs (1) through (4)." The capacious language in § 1B1.13(b)(5) underscores that the enumerated circumstances listed in the Policy Statement are not an "exhaustive list" of extraordinary or compelling reasons. *Johnson*, 143 F.4th at 216. For example, in *Johnson*, the Court affirmed a district court's decision to reduce a defendant's sentence based on the disparity between the defendant's sentence and those of his co-conspirators. *Id.* at 215–16.

Section 1B1.13(c) of the Policy Statement is titled "LIMITATION ON CHANGES IN LAW." It specifies that, "[e]xcept as provided in subsection (b)(6)," which concerns an "unusually long sentence," "a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement." U.S.S.G. § 1B1.13(c). "However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under [the Policy Statement], a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction." *Id.*; *see Davis*, 99 F.4th at 654.[10]

---

[10] In *Concepcion v. United States*, 597 U.S. 481 (2022), the Supreme Court concluded that a district court's general obligation "to consider [all] nonfrivolous arguments presented by the parties," *id.* at 487, required it "to consider intervening changes of law or fact in exercising [its] discretion to reduce a sentence pursuant to the First Step Act." *Id.* at 500. However, the Court acknowledged that "Congress or the Constitution [may] limit[ ] the scope of information that a district court may consider in deciding whether, and to what extent, to modify a sentence. . . ." *Id.* at 486. "Thus," the Court noted, "Congress expressly cabined district courts' discretion [to reduce a sentence] by requiring courts to abide by the Sentencing Commission's policy statements." *Id.* at 495.

Section 1B1.13(d) of the Policy Statement concerns rehabilitation of the defendant. It limits the weight a court may assign to a defendant's rehabilitation while serving a sentence. That section provides that, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13(d). "However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." *Id.* And, § 1B1.13(e) provides that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant" a sentence reduction.

Even if a defendant prisoner establishes extraordinary and compelling reasons for relief, a reduced sentence does not necessarily follow. The court must then consider the sentencing factors under 18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate. *See Dillon*, 560 U.S. at 826–27; *United States v. Washington* 161 F.4th 816, 821 (4th Cir. 2025)  at *3 (4th Cir. Dec. 12, 2025); *Brown*, 78 F.4th at 128; *United States v. Mangarella*, 57 F.4th 200, 203 (4th Cir. 2023); *Malone*, 57 F.4th at 174; *Bethea*, 54 F.4th at 833; *Hargrove*, 30 F.4th at 195; *High*, 997 F.3d at 186; *Martin*, 916 F.3d at 397; *see also Kibble*, 992 F.3d at 329–30 (noting that district court must consider § 3553(a) factors when considering a motion to reduce sentence under § 3582(c)(1)(A) and district court enjoys broad discretion in conducting this analysis); *United States v. Trotman*, 829 F. App'x 607, 608 (4th Cir. 2020) (per curiam) (recognizing that, when considering a motion to reduce sentence under § 3582(c)(1)(A), the court must consider the sentencing factors under § 3553(a), to the extent applicable; *United States v. Chambliss*, 948 F.3d 691, 693–94 (5th Cir. 2020) (district court must give due consideration to the § 3553(a) factors); *see also United States v. Jones*, 2022 WL 2303960, at *1 (4th Cir. June 27,

2022) (per curiam) (noting that "a court need not explicitly make findings on extraordinary and compelling reasons where consideration of the § 3553(a) factors counsels against release"); *United States v. Butts*, 2021 WL 3929349, at *2 (4th Cir. Sept. 2, 2021) (per curiam) (noting that, even if the district court finds extraordinary and compelling circumstances, it must consider the § 3553(a) factors to the extent applicable in exercising its discretion). Notably, the amendments to the Guidelines in November 2023 did not alter this requirement.

The § 3553(a) "factors include 'the nature and circumstances of the offense'; 'the history and characteristics of the defendant'; and the need for the sentence to 'provide just punishment,' 'afford adequate deterrence,' 'protect the public from further crimes of the defendant,' and 'provide the defendant with. . .training, medical care, or other correctional treatment.'" *Jenkins*, 22 F.4th at 170 (quoting 18 U.S.C. § 3553(a)). Additionally, the court may consider the "'kinds of sentences available,' and 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'" *Burleigh*, 145 F.4th 541, 548 (quoting 18 U.S.C. § 3553(a)(1), (3), (6)). As the Fourth Circuit has observed, "'many case-specific facts fit under the broad umbrella of the Section 3553(a) factors.'" *Bond*, 56 F.4th at 384 (quoting *Jackson*, 952 F.3d at 500). District courts "enjoy the discretion to give additional weight to any one factor so long as they do not confine their analysis to that factor." *Davis*, 99 F.4th at 656; *see Washington*, 2025 WL 3559989 at *3; *United States v. Friend*, 2 F.4th 369, 381–82 (4th Cir. 2021). And, in weighing the § 3553(a) factors, the court may consider the terms of a plea bargain. *Bond*, 56 F.4th at 384–85.

In *Davis*, 99 F.4th at 659, the Fourth Circuit said: "District courts are not required to acknowledge and address each of the defendant's arguments on the record when conducting a § 3553(a) analysis." But, "'the record as a whole'" must demonstrate that the judge considered

the parties' contentions and had "'a reasoned basis'" for the exercise of judicial discretion. *Malone*, 57 F.4th at 176 (citations omitted); *see also Davis*, 99 F.4th at 659; *United States v. Puzey*, 2023 WL 2985127, at *2 (4th Cir. Apr. 18, 2023) (per curiam).

In particular, "the court must provide an explanation sufficient 'to allow for meaningful appellate review' in light of the particular circumstances of the case." *United States v. Cohen*, 2022 WL 2314300, at *1 (4th Cir. June 28, 2022) (per curiam) (quoting *High*, 997 F.3d at 190). And, a district court abuses its discretion when it "act[s] arbitrarily or irrationally," "fail[s] to consider judicially recognized factors constraining its exercise of discretion," "relie[s] on erroneous factual or legal premises," or "commit[s] an error of law." *High*, 997 F.3d at 187 (internal quotation marks omitted); *see Jenkins*, 22 F.4th at 167; *see also Brown*, 78 F.4th at 132 (criticizing district judge's "cursory" consideration of the § 3553(a) factors); *United States v. Dillard*, 891 F.3d 151, 158 (4th Cir. 2018). Moreover, the district court's "discretion is not boundless" and "in exceptional case[s]" the district court can abuse this discretion either by neglecting to "adequately explain how it weighed the § 3553(a) factors" or by "failing to recognize that the relevant § 3553(a) factors clearly favor release." *United States v. Smith*, 2025 WL 1864767, at *3, *4 (4th Cir. July 7, 2025) (unreported) (cleaned up) (finding that the district court abused its discretion by failing to acknowledge how the "multiplicity of factors combine to make the case for compassionate release").

"How much explanation is 'enough' depends on the complexity of a given case." *Gutierrez*, 2023 WL 245001, at *3; *see Washington*, 161 F.4th at 821; *Malone*, 57 F.4th at 170; *United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021). For example, "when a defendant 'present[s] a significant amount of post-sentencing mitigation evidence, . . . a more robust and detailed explanation [is] required.'" *Cohen*, 2022 WL 2314300, at *1 (quoting *High*, 997 F.3d at 190)

(alterations in *Cohen*).

In any event, as stated, "the court must provide an explanation sufficient 'to allow for meaningful appellate review' in light of the particular circumstances of the case." *Cohen*, 2022 WL 2314300, at *1 (quoting *High*, 997 F.3d at 190). It is "not difficult" for a district court to satisfy this standard. *Burleigh*, 145 F.4th 541, 550. However, a more detailed explanation may be required if a substantial change in the law creates a disparity between the sentence a defendant actually received and the sentence he would receive, if sentenced under current law. *See Davis*, 99 F.4th at 661; *see* 18 U.S.C. § 3553(a)(6) (directing a court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."); *see Moody*, 115 F.4th at 310 (recognizing that a defendant may not "challenge the validity of a sentence in a compassionate release" motion but explaining that a court may consider whether a defendant's sentence would be shorter "because of changes in law."). In explaining its compassionate release ruling, "a district court is permitted to add to its original, sentencing-phase consideration of the § 3553(a) factors . . . ." *Bethea*, 54 F.4th at 834; *see Kibble*, 992 F.3d at 332.

*Davis*, 99 F.4th 647, is informative. The Court recognized that a change in the Guidelines or the law can produce a sentencing disparity under § 3553(a)(6). *Id.* at 654–55. And, the Court observed that changes in the law since the defendant's sentencing "would [have] lower[ed] [the defendant's] guidelines range from a 188–235 months range to [a] 92–115 months range." *Id.* at 661.

According to the *Davis* Court, if the defendant were sentenced under current Guidelines, "it is very likely that [the defendant] would already be out of prison." *Id.* The Court stated, *id.*: "That reality alone implicates one of the applicable sentencing factors: 'the need to avoid

18

unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'" *Id.* (quoting 18 U.S.C. § 3553(a)(6)).  It concluded that the district court was obligated to provide a "detailed explanation" of its § 3553(a) analysis, because "[t]his sentence disparity is so stark, and the change in law so substantial." *Davis*, 99 F.4th at 661 (citing *Chavez-Meza v. United States*, 585 U.S. 109, 119 (2018)).  As the *Burleigh* Court cautioned, even if a defendant's sentence "would be shorter if issued today," this fact does not "increase the burden on district courts to explain their decision." *Burleigh*, 145 F.4th, 550, 551.

## IV. Discussion

### A.

Bailey asserts that he "has fully exhausted his administrative rights."  ECF 132 at 8. Additionally, he states that the Warden denied his request for compassionate release and that he enclosed the denial. *Id.* However, no documentation of his submission or the denial is docketed with the motion.  *See* ECF 132.

The government claims that, for the purposes of exhaustion, "Defendant has not . . . requested compassionate release based on the need to care for his ailing mother." ECF 139 at 4. It attaches defendant's previous request to the Warden to demonstrate defendant solely "moved for compassionate release due to health concerns during the COVID19 pandemic." *Id.* at 4; *see* ECF 139-1.

Defendant did not respond to these contentions.  And, there is no documentation of exhaustion on this issue.  However, when, as here, a defendant previously exhausted his

administrative remedies in connection with an earlier compassionate release motion, he need not exhaust for "a second time . . . ." *King*, 2025 WL 1692747, at *1.

**B.**

**1.**

Bailey's mother is now approximately 67 years of age. ECF 143. Defendant contends that his mother's heath is deteriorating and that he is her sole caregiver. ECF 132 at 2. Specifically, Bailey claims that he is an only child (ECF 132 at 2: ECF 142 at 2); Ms. Drake's health and independence have deteriorated; and she has several serious health issues. ECF 132 at 2.

In his Reply (ECF 140), defendant maintains that his mother's condition has continued to deteriorate. *Id.* at 2. He claims that she suffers from chronic kidney disease. *Id.*[11] And, in a supplement filed on October 3, 2025 (ECF 143), Bailey asserts: "She has early On-Set Dementia, Acute L[e]ukemia (Stage 1) that chemothe[rapy] is treating and some kind of lumps on one of her kidneys that may require a removal or [dialysis]." Further, defendant explains that although his mother has three siblings, they do not reside in Maryland and cannot care for Ms. Drake due to their own advanced ages, health conditions, and personal responsibilities. ECF 140 at 8.

According to Bailey, because of the death of his stepfather, and because his mother "remains alone in a state without family, without relatives . . ." (ECF 142 at 2), she has no one to help her. *Id.* Defendant maintains that his mother needs help "with her activities of daily living." *Id.* In addition, defendant wishes to assist his mother with her financial affairs because he is concerned about possible mismanagement. ECF 130-1 at 3; ECF 140 at 3. He states: "Bills have

---

[11] Defendant uses the abbreviation CKD to refer to his mother's condition. ECF 140 at 2. Given the context, and because CKD is a common acronym for Chronic Kidney Disease, I presume that this is what the defendant is referring to in his Reply.

gone unpaid while others have been double paid . . . and other funds just went missing." ECF 142 at 2.

In April 2022, while defendant's first compassionate release motion was pending, defendant's mother wrote to the Court. ECF 123-1 at 1. She recounted the loss of her spouse and her then recent diagnosis of both leukemia and diabetes. *Id*. at 1. Ms. Drake stated, *id.*: "Lately my health hasn't looked as good as I would like to be. .[sic] I would like the court to be aware of [i]t so that if Shem has a chance to care for me by being released I would like the help but not burden the court." Ms. Drake added, *id.*: "So with the medical treatment and medication I take or the poor health I've been in lately, the pain I suffer daily or the two occas[]ions that I fell . . . a substitute would seem imperative . . . ."

A neighbor, Tonya Baker, also wrote to the Court at that time. *Id.* at 2. She stated, *id.*: ""I write this letter on my friends [sic] behalf since her health has not been not so great . . . ." Ms. Baker described Ms. Drake as a close friend and stated that she tries to visit or call Ms. Drake frequently to check on her. *Id.* Ms. Baker noted her concern about Ms. Drake's general welfare, loneliness, and weakness following a leukemia treatment. *Id.*

In its Opposition, the government states, ECF 139 at 9: "[T]he government does not contest that the defendant has demonstrated extraordinary and compelling circumstances here."[12] Nevertheless, the government posits that defendant has not listed an appropriate reason under the Guidelines for compassionate release. *Id*. at 12. It urges the Court to deny the Motion, stating that although it "certainly understands that [Ms. Drake] may need additional help, there is no clear

---

[12] Based on the content of the Opposition, the government seems to have included that statement in error.

ailment, illness, or disease that [defendant] cites to that would meet as an exceptional family circumstance permitting compassionate release." *Id.* (alterations added).

Moreover, the government maintains that the only family "circumstances that qualify for compassionate release are, 'the death or incapacitation of the caregiver of the defendant's minor child' or 'the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner'." *Id.* (citing U.S.S.G. § 1B1.13 app. Note 1.)  As such, the government argues that incapacitation of defendant's mother "does not qualify him for early release." *Id.*

### 2.

The Opposition was filed on November 1, 2024.  ECF 139.  There, the government cites to an outdated version of the Guidelines. *Id.* at 8–9; 12.  Effective November 2023, *i.e.*, a year before the filing of the Opposition, the Guidelines were amended.   Of relevance, U.S.S.G. § 1B1.13(b)(3) was modified by Amendment 814.   The Sentencing Commission explains (emphasis added):

> First, this modification expands the existing provision relating to the death or incapacitation of the caregiver of a defendant's minor child to include a child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition. *Second, the modification adds a new provision for cases in which a defendant's parent is incapacitated.* Finally, the modification adds a second new provision that applies when similar circumstances exist with respect to a person whose relationship with the defendant is similar in kind to that of an immediate family member.

United States Sentencing Commission, *2023 Amendments in Brief*, at 2, https://perma.cc/6MGU-7SZQ.

U.S.S.G. § 1B1.13(b) is titled "FAMILY CIRCUMSTANCES OF THE DEFENDANT." Section 1B1.13(b)(3)(C) provides for an extraordinary and compelling reason based on "[t]he

incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent."

Under this section, courts examine: (1) the parent's incapacitation; and (2) whether the defendant is the only available caregiver. *United States v. Villar*, No. 16 CR 340, 2024 WL 2939018, at *3 (June 11, 2024). Therefore, the government is wrong in claiming that incapacitation of a parent is not a basis for compassionate release. *See* ECF 139 at 12.

**3.**

Notably, "incapacitation" is a high bar. The BOP has previously defined incapacitation narrowly, *i.e.*, when the family member (1) has "[s]uffered a serious injury, or a debilitating physical illness" such that the family member "is completely disabled, meaning that the [family member] cannot carry on any self-care and is totally confined to a bed or chair," or (2) has "[a] severe cognitive deficit (e.g., Alzheimer's disease or traumatic brain injury that has severely affected the [family member's] mental capacity or function), but may not be confined to a bed or chair." Fed. Bureau of Prisons, Program Statement 5050.50 at 10 (2019) https://www.bop.gov/policy/progstat/5050_050_EN.pdf (alterations added).

Moreover, "[c]ourts have interpreted incapacitation in this context to mean that the individual is 'completely disabled' and 'cannot carry on any self-care' or 'is totally confined to a bed or chair.'" *United States v. Howard*, No. 3:21-CR-30187-NJR-1, 2025 WL 1684262, at *2 (S.D. Ill. June 16, 2025) (collecting cases); *see United States v. Gross*, No. 1 :17-CR-37-HAB, 2024 WL 4100325, at *3 (N.D. Ind. Sept. 5, 2024); *United States v. Steele*, 2024 WL 1928945, at *3 (S.D. Ohio May 1, 2024).

Therefore, an individual does not qualify as incapacitated when the medical conditions impact daily life but do not severely impede functionality. *See United States v. Swarn*, No. CR 20-

118 (JRT/BRT), 2025 WL 2306990, at *2 (D. Minn. Aug. 11, 2025) (finding no incapacitation because medical records "contain no indication that [defendant's] mother is bedridden, chair-bound, or suffering from cognitive decline." ); *United States v. Stayton*, No. 1: 19-CR-255- 1, 2025 WL 1359805, at *3 (M.D.N.C. May 9, 2025) (finding that "the mere existence of a parent being elderly and who has general health issues does not demonstrate incapacitation."); *United States v. Dewalt*, No. 1:20-CR-78, 2025 WL 3213875, at *3 (M.D.N.C. Nov. 18, 2025) ("The case law is consistent that evidence of an elderly parent with health issues is not sufficient to show incapacitation."); *United States v. Vaughn*, No. 7:10-CR-17, 2025 WL 84215, at *6 (W.D. Va. Jan. 13, 2025) ("The court is sympathetic to Vaughn's desire to care for his mother, but the evidence submitted does not show that her medical conditions are so dire that she has become incapacitated."); *United States v. Bass*, No. 4:19-CR-35 RLW, 2024 WL 3552030, at *3 (E.D. Mo. July 26, 2024) (finding defendant failed to present evidence that his father was incapacitated); *United States v. Armstrong*, TDC-16-0601, 2024 WL 1096621, at *2 (D. Md. Mar. 13, 2024) (no showing of incapacitation based only on the allegation that a parent suffered from heart disease and required regular assistance). Furthermore, "general claims" from a defendant's mother "that it would be helpful for her son to take care of her and cook and clean for her do not suffice to demonstrate incapacity." *Gross*, 2024 WL 4100325, at *3; *see United States v. Wendel*, 2024 WL 2748493, at *2 (N.D. Ohio May 29, 2024) ("Ms. Wendel's general assertion she is unable to 'manage her home' is not sufficient to demonstrate that she is incapacitated.").

    *United States v. Stamper*, No. 3:20-CR-00295-FDW-DCK, 2024 WL 3512807 (W.D.N.C. July 23, 2024), is instructive. There, the court wrote, *id.* at *5 (alterations added): "Defendant states his mother lives alone and has hearing loss, vision loss, st[e]nts in her heart, and is suffering from the beginning stages of Alzheimer's. She also has [a] history of falls." A letter from the defendant's

mother corroborated her health issues and requested the defendant's assistance. However, the court ruled that the defendant had not established his mother's incapacity, stating *id.*: "While the Court does not deny his mother's health concerns as legitimate, and empathizes with her difficulties, Defendant does not provide additional verifiable medical documentation establishing his mother is incapacitated and in need of a full-time caregiver." Furthermore, the court noted that although the "mother's conditions may worsen and eventually need full-time care, she currently is not incapable of caring for herself." *Id.*

Defendant asserts that his mother's health conditions are "making her everyday activities more complex," ECF 142 at 1. He states that he could help his mother in many ways. ECF 132 at 2. He points out that his mother's now deceased husband cooked, cleaned, transported Ms. Drake to appointments, and provided her with emotional support. *Id.* However, it has been years since the death of Ms. Drake's husband and, in the meantime, Ms. Drake has lived by herself. ECF 142 at 1. Bailey also expresses concerns about his mother's financial situation. His concerns pertain, in part, to Ms. Drake's alleged donations to unspecified charities unknown to defendant as well as issues with payment of bills. ECF 140 at 3.

But, defendant's claims of his mother's incapacitation are based on his own assertions. *See* ECF 132; ECF 140; ECF 143. For example, he recounts that his mother was hospitalized twice in 2024. ECF 132 at 2. In a letter of October 10, 2025 (ECF 142), defendant asserts that Ms. Drake fell and bruised her hip while getting a drink, and was subsequently hospitalized briefly. *Id.* at 1. In his Reply, defendant writes that he "has been made aware that on his maternal side for the last 5 generations . . . ALL the women have been known to suffer the grim fate of [Alzheimer's] Dementia in both early and late stages of the disease." ECF 140 at 3 (alteration added). In a letter

docketed October 3, 2025 (ECF 143), defendant states that his mother has early on-set dementia. *Id.* at 1.

Notably, defendant has not provided any medical records for his mother to support his assertions regarding her incapacitation. In his Reply, defendant claims that Ms. Drake's medical records were lost during his incarceration. ECF 140 at 1. But, this does not diminish the Court's need for support for the defendant's assertions. Even taking into consideration the many difficulties for a defendant to supplement the record while incarcerated, there has been more than enough time for defendant to provide the Court with medical records concerning his mother's health conditions.[13]

Generally, courts require a defendant to provide specific evidence establishing incapacitation. *See, e.g., United States v. Zermeno*, No. l:16-CR-79(1), 2024 WL 4043445, at *4 (E.D. Tex. Sept. 3, 2024) ("Noticeably lacking from Zermeno's documentation is any indication that [his mother] is incapacitated in that she suffers from a serious injury or debilitating physical illness that renders her completely disabled or that she suffers from a severe cognitive deficit.") (alteration added); *United States v. Romano*, No. 22-CR-12 (KAM), 2023 WL 8735203, at *3 (E.D.N.Y. Dec. 19, 2023) (finding the defendant's failure to attach any medical evidence or opinions or similarly competent evidence rendered "the Court unable to make the necessary factual findings"); *Villar*, 2024 WL 2939018, at *4 (finding insufficient evidence in the record of defendant's parent's incapacitation because their doctors failed to opine about their limitations); *United States v. Yarbrough*, No. 2:06-CR-00203-1, 2023 WL 8614050, at *3 (W.D. Pa. Dec. 13,

---

[13] In my prior Memorandum Opinion (ECF 127), I considered a caregiver argument lodged by defendant and noted that he failed to submit his mother's medical records. *Id.* at 19.

2023) (denying compassionate relief because "Yarbrough does not provide his mother's medical records, or records of any sort, so as to demonstrate her incapacitation.").

To be sure, Ms. Drake's health conditions are unfortunate.  But, the existence of a medical condition does not equate to incapacity. *See United States v. Bartlett*, No. 1:14-CR-14-HAB, 2025 WL 1272136, at *3 (N.D. Ind. May 1, 2025) (finding no incapacitation despite documented medical conditions because "nothing in [defendant's] motion suggests, much less demonstrates, that [his mother] cannot. . . provide self-care. To the contrary, it appears that she is doing just that as [defendant]'s motion notes that she 'lives alone.'") (alterations added).

As to whether defendant has established that he is the sole caregiver, he claims that his mother's three siblings are unable to act as caregivers as they do not reside in Maryland, and two are medically handicapped themselves and thus unable to assist their sister.  ECF 140 at 8.  For example, one brother is recovering from a brain aneurysm and will soon have two hip replacements. *Id.*  Another brother, who is eighty years of age, is bedridden following a stroke and resides in Arizona. *Id.*  Defendant also asserts that his aunt is unable to care for Ms. Drake because of her work and her own childcare needs. *Id.*[14] Defendant also alleges that his mother's friend, Ms. Baker, has purchased a home in Ohio, and can no longer assist his mother.  ECF 132 at 2.

Defendant's assertion that he is his mother's sole available caregiver is not supported by any evidence. *See* ECF 129; ECF 132; ECF 140; ECF 141; ECF 142. If a defendant relies on a sole-caregiver argument, "courts generally require a showing of several sources indicating that the

---

[14] Defendant does "not address other supplemental sources of care for [defendant's] mother, or whether she qualifies for Medicaid or skilled nursing care or other full time care services." *United States v. Cansler*, No. 4:22-CR-00019, 2025 WL 3110562, at *4 (W.D. Ky. Nov. 6, 2025) (finding absence of argument around non-familial caretakers fatal to the claim) (alterations added); *see United States v. Harris*, No. 4:21-CR-00029, 2024 WL 5075642, at *5 (W.D. Ky. Dec. 11, 2024).

defendant is the only available caregiver for a family member in dire conditions, before concluding that an extraordinary and compelling reason has been established." *United States v. Abayev*, No. 22-CR-655, 2025 WL 1739789, at *5 (S.D.N.Y. June 24, 2025); *see United States v. Ruiz-Patozano*, No. 20-CR-686 (JGK), 2025 WL 3136595, at *2 (S.D.N.Y. Nov. 10, 2025); *United States v. Doe*, No. 1:17-CR-00091-JAW-1, 2024 WL 4751731, at *12 (D. Me. Nov. 12, 2024); *United States v. Christopher*, No. 22 CR. 61 (JPC), 2024 WL 4707909, at *4 (S.D.N.Y. Nov. 7, 2024); *Gross*, 2024 WL 4100325, at *3; *see also United States v. Figueroa-Gibson*, No. CR 16-802 (RAM), 2024 WL 376432, at *6 (D.P.R. Jan. 31, 2024) (finding that although defendant claimed geographic distance and mental infirmity of family members, without "more evidence as to these challenges, the Court cannot find that these other family members are unable to provide adequate care."); *United States v. Striganivicz*, No. 95-271, 2023 WL 4868100, at *1 (E.D. Pa. July 31, 2023) (explaining that courts have "denied motions for compassionate release premised on sick or elderly parents in the absence of strong evidence the petitioner is the sole individual capable of caring for the parent.") (cleaned up).

In my prior Memorandum Opinion (ECF 127), addressing defendant's first compassionate release motion, Bailey's primary argument pertained to his own health conditions and the risk of severe illness posed by Covid 19. *Id.* at 127. But, I also considered defendant's argument that his role as his mother's sole caregiver satisfied the extraordinary and compelling requirement. *Id.* at 30. I noted that "Bailey claims that his mother suffers from leukemia, diabetes, hypertension, onset long-term memory loss, carpel tunnel syndrome, and other ailments." *Id.* Although the Memorandum Opinion preceded the 2023 Guidelines, I analyzed the contention under the family circumstances sole caregiver standard. *Id.* And, I examined the letters from Ms. Drake and Ms.

Baker that I discussed earlier. *See* ECF 127 at 29–30. I also noted that defendant had not submitted his mother's medical records. *Id.* at 29.

Of import, I found that defendant had not provided enough evidence to establish an extraordinary and compelling reason on this basis. I said, *id.* at 30: "The record does not establish that Bailey is the only possible caregiver for his mother. . . . Thus, in my view, defendant has failed to establish an extraordinary and compelling reason for his release on the basis of his family circumstances."

### 4.

Even if, *arguendo*, defendant has established that he is the sole caregiver, the record does not establish that Ms. Drake is so incapacitated as to require full-time care. The Court understands defendant's desire to be available for his mother. Nonetheless, I must construe the words of the Guidelines in accordance with their ordinary meaning. *See United States v. Boler*, 115 F.4th 316, 323 (4th Cir. 2024); *United States v. Haas*, 986 F.3d 467, 480 (4th Cir. 2021).

I conclude that defendant has failed to establish an extraordinary and compelling reason for his release grounded in U.S.S.G. § 1B1.13(b)(3)(C).

### 5.

In a letter docketed on October 15, 2025 (ECF 144), defendant alleged that he was stabbed and jumped "by other prisoners right in front of officers who didn[']t prevent nor try to stop it." *Id.* at 2 (alteration added). He added, *id.* (alteration added): "I truly hope your Honor has received my last submission 2 [weeks] ago describing the Assault/Tort[u]re I experienced while at Coleman

on July 23, 2025. The investigator from the Department of Justice will and can better inform the Court if your Honor feels the need." *Id.* at 3 (alterations added).[15]

In defendant's letter of May 15, 2024 (ECF 130), he referenced an attack by fellow prisoners at USP Hazelton that occurred on December 23, 2017. *Id.* at 2. Further, he notes that video evidence would show that he was assaulted by other prisoners on April 12, 2024, during his incarceration at Butner FCI-2. *Id.* at 1.

In a letter docketed on December 16, 2025, which arrived while I was working on the Motion, Bailey reported, ECF 147: "I became a VICTIM OF ABUSE when I was Assaulted by several officers & my teeth were knocked out among other claims I detailed to this court."

Defendant's claims of abuse could constitute an extraordinary and compelling reason for compassionate release under U.S.S.G. § 1B1.13(b)(4)(B). The section provides for compassionate release if the defendant "was a victim of . . . B) physical abuse resulting in 'serious bodily injury,' as defined in the Commentary to 1B1.1 . . . that was committed by, or at the direction of, a correctional officer . . . or any other individual who had custody or control over the defendant."

However, the provision also requires that the misconduct must be established either by a criminal conviction; a finding or admission of liability in a civil case; or a finding in an administrative proceeding. *Id.* There is an exception only if proceedings are "unduly delayed" or the defendant is in "imminent danger." *Id.*

Defendant's claims are concerning. But, some of the allegations came after briefing. Even construing defendant's submissions liberally, he does not raise the abuse claims as a basis for the Motion. ECF 132; 140. *Cf. Clark v. Sweeney*, 607 U.S. _____, _____ S.Ct. _____, No. 25-52,

---

[15] To my knowledge, the defendant's letters from the preceding weeks do not contain the referenced allegation. *See* ECF 140; 141; ECF 142; ECF 143.

2025 WL 3260170, at *1 (Nov. 24, 2025) (per curiam) (stating that under the presentation principle a district court must serve as a neutral arbiter of matters the parties present); *see Folkes v. Nelsen,* 34 F.4th 258 (4th Cir. 2022). Nor has he presented evidence to support such a claim. And, he does not attempt to satisfy the requirements of § 1B1.13(b)(4)(B), outlined above.

  If defendant wishes to present a claim based on U.S.S.G. § 1B1.13(b)(4)(B), he may do so. But, on this record, the Court cannot resolve such a contention.

### D.  18 U.S.C. § 3355(a)

Even assuming, *arguendo*, that defendant established an extraordinary and compelling reason for compassionate release, that finding would not end the inquiry. The Court must next consider the sentencing factors in 18 U.S.C. § 3355(a). These include: (1) the nature of the offense and the defendant's characteristics; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (3) the kinds of sentences available and the applicable Guidelines range; (4) any pertinent Commission policy statements; (5) the need to avoid unwarranted sentence disparities; and (6) the need to provide restitution to victims.

In my view, a balancing of the § 3553(a) factors indicates that defendant's release from prison is not warranted at this time.

Bailey argues that he is fully rehabilitated and that he wishes to lead a "law[-]abiding life." ECF 132 at 5 (alteration added). Defendant writes, *id.* at 3: "For over 8 years Bailey has been desp[e]rately searching for redemption[,] he has sought ways to express remorse for his unbecoming . . . conduct . . . and overall behavior." (Alterations added).

To be sure, where appropriate, the district court "must account not only for the circumstances at the time of the original offense but also for significant post-sentencing

developments." *United States v. Mangarella*, 57 F.4th 200, 203 (4th Cir. 2023); *see United States v. Martin*, 916 F.3d 389, 397 (4th Cir. 2019); *Kibble*, 992 F.3d at 334 n.3.  Courts place significant weight on a defendant's post-sentencing conduct because it "provides the most up-to-date picture" of a defendant's "'history and characteristics.'" *Pepper v. United States*, 562 U.S. 476, 492 (2011) (citing 18 U.S.C. § 3553(a)(1)).  The court must "at least weigh the [defendant's] conduct in the years since the[ ] initial sentencing[ ]." *McDonald*, 986 F.3d at 412; *see Martin*, 916 F.3d at 397 (requiring an "individualized explanation" as to rehabilitative efforts).

Rehabilitation efforts should be considered in regard to a motion for compassionate release. *See United States v. Lancaster*, 997 F.3d 171, 175 (2021) ("And in considering the § 3553(a) factors, the court can take into account a defendant's conduct after his initial sentencing."); *McDonald*, 986 F.3d at 410–12 (noting that on a motion to reduce sentence under the First Step Act, the district court must consider defendant's post-sentencing conduct); *Martin,* 916 F.3d at 397 (requiring an "individualized explanation" as to rehabilitative efforts); *United States v. Randall*, 837 Fed. App'x 1008, 1009 (4th Cir. 2021) ("[A] district court must provide an individualized explanation for denying a sentence reduction motion under the First Step Act when the defendant presents evidence of his post-sentencing rehabilitation."); *United States v. Rudisill*, 834 Fed. App'x 827, 829 (4th Cir. 2021) (finding district judge abused his discretion in denying motion under the First Step Act without addressing defendant's post-sentencing conduct). However, "rehabilitation alone cannot constitute an extraordinary and compelling reason for release." *United States v. Davis*, No. 21-6960, 2022 WL 127900, at *1 (4th Cir. Jan. 13, 2022).

As of January 2021, defendant had completed six educational courses and had no incident reports in his discipline history from the previous six months. ECF 113-1 at 8.  Defendant now states that he has completed twenty-two educational courses while in BOP custody. ECF 141 at 1.

The courses include drug treatment and education programs. *Id.* Additionally, defendant asserts that he "has helped inmates reform relationships with their family" and that he has spent time "mentoring other inmates." ECF 132 at 6. If these statements are true, these achievements are praiseworthy, and defendant's post-sentencing conduct would weigh in his favor.

As the government notes, Bailey's crime was a serious one. Bailey was convicted of an armed robbery offense, which involved threatening two individuals at gunpoint. ECF 70, ¶¶ 8–9. Such conduct was in complete disregard to the safety of others. The seriousness of the instant offense weighs against reducing Bailey's sentence.

Additionally, the Court cannot overlook defendant's serious criminal history. *Id.* ¶ 39. As discussed earlier, Bailey had nine prior adult criminal convictions. *Id.* ¶¶ 28–36. Bailey was twice convicted of robberies involving commercial establishments in New York. *Id.* ¶¶ 29, 30. He was sentenced to three to six years of imprisonment. *Id.* While incarcerated, Bailey was found guilty of possessing contraband and sentenced to two to four years of imprisonment. *Id.* ¶ 31. Soon after defendant's release in 2004, *id.* ¶¶ 29, 30, he was convicted of larceny in 2004 and of second-degree assault in 2006. *Id.* ¶¶ 32, 33.

Just a year after the assault, Bailey was convicted in federal court of possession of a firearm by a prohibited person. *Id.* ¶ 35. He received a lengthy sentence and experienced federal incarceration. The sentence was vacated on appeal, and Bailey was resentenced to time served from December 2007 to January 17, 2014. MJG-07-0496, ECF 85. Still, defendant experienced a significant period of incarceration, and it did not deter him from committing another serious offense.

Moreover, Bailey violated supervised release,[16] for which he was sentenced to eight months of imprisonment.  ECF 70, ¶ 35. He was released on December 16, 2015, with his supervised release set to expire one year later.  *Id.*  Yet, that did not deter him from engaging in the crime at issue.

I am persuaded that the § 3553(a) factors weigh against Bailey.

### IV. Conclusion

I shall deny the request for appointment of counsel because Bailey is an effective self-advocate.[17]  And, in my view, a reduction in defendant's sentence would undermine respect for the law.  Therefore, for all the reasons stated above, I shall deny the Motion (ECF 132), without prejudice.

An Order follows, consistent with this Memorandum Opinion.


Date: January 14, 2026                              _____/s/_____

                                                    Ellen L.  Hollander
                                                    United States District Judge

---

[16] Bailey was convicted of driving without a license on November 17, 2014.  ECF 70, ¶ 36.

[17] If Bailey files another compassionate release motion, based on § 1B.13(b)(4)(B), I will entertain a request for appointment of counsel.